Jack D. Edwards, 6-3877
Kaden B. Canfield, 7-6238
EDWARDS LAW OFFICE, P.C.
PO Box 5345
Etna, WY  83118-5345
Telephone:     307.883.2222
Facsimile:     307.883.0555

and

Robert E. Ammons (*pro hac vice* application to be submitted)
THE AMMONS LAW FIRM, L.L.P.
3700 Montrose Boulevard
Houston, TX  77006
Telephone:     713.523.1606
Facsimile:     713.523.4159

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| CRAIG D. SMITH as Guardian and Conservator of CHARMAINE L. SMITH | ) ) ) | |
| Plaintiff, | ) ) | Civil No.: _____ |
| vs. | ) ) | |
| GENERAL MOTORS, LLC, | ) ) | JURY TRIAL REQUESTED |
| Defendant. | ) ) | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

COMES NOW, the Plaintiff Craig D. Smith as Guardian and Conservator of Charmaine L. Smith complaining of General Motors LLC ("Defendant"), and for cause of action would respectfully show the following:

1

I.

## PARTIES

1.      Charmaine Smith was a resident of Wyoming at the time of the occurrence made the basis of this lawsuit and is still a resident of Wyoming.

2.      Craig Smith is Charmaine Smith's husband and court appointed guardian and conservator.

3.      Defendant General Motors, LLC (hereinafter referred to as "GM") is a Delaware limited liability company doing business in the State of Wyoming with its principal place of business in Detroit, Michigan. Defendant GM was and is in the business of designing, developing, testing, manufacturing, selling, distributing, and otherwise placing into the stream of commerce motor vehicles for use by the consuming public. Defendant GM can be served with process through its registered agent, Corporation Service Company, 1821 Logan Ave., Cheyenne, Wyoming 82001.

II.

## JURISDICTION AND VENUE

4.      Defendant General Motors, LLC has its principal place of business in Michigan. No member of General Motors, LLC is a resident of the State of Wyoming. Accordingly, complete diversity of citizenship exists.

5.      Jurisdiction, therefore, attaches pursuant to 28 U.S.C §1332 because there is complete diversity of parties and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00).

6.      Defendant GM purposefully avails itself of the Wyoming market for the distribution and sale of pickup trucks.

7.      Defendant GM is registered to do business in Wyoming.

2

8.      The Sierra pickup truck subject to this lawsuit was sold in Wyoming, used by Wyoming residents, driven on Wyoming roads and caused injuries in an accident in Wyoming. Accordingly, this Court has personal jurisdiction over Defendant GM.

9.      Venue is proper and maintainable because the occurrence made the basis of this lawsuit occurred in Wyoming.

III.

BACKGROUND AND FACTS COMMON TO ALL CAUSES OF ACTION

10.     This crashworthiness case involves the rollover occupant protection system ("ROPS") of a 1995 GMC Sierra bearing VIN 2GTEK19K751567579 ("the Sierra").

11.     The ROPS consists of (1) the roof structure; (2) the seatbelt restraint; and (3) the vehicle's glazing, including all components of these devices.

12.     The ROPS of the Sierra was designed by GM.

13.     The ROPS of the Sierra was manufactured by GM.

14.     The ROPS of the Sierra was assembled by GM.

15.     The Sierra was marketed by GM.

16.     The Sierra was sold by GM.

17.     The purpose of performing dynamic rollover testing is to determine if a vehicle's ROPS will maintain survival space and contain the occupant within the vehicle's safety cell.

18.     Maintaining survival space helps prevent and/or minimize injuries.

19.     GM should have conducted dynamic testing of the Sierra to ensure that the vehicle was safe in rollover crashes even though such testing is not mandated by the Federal Government.

20.     The Federal Motor Vehicle Safety Standards ("FMVSS") are regulations written in terms of minimum safety performance requirements for motor vehicles or motor vehicle equipment.

3

21.     Exceeding Federal Standards is desirable when it enhances the safety of motor vehicle occupants.

22.     Federal Standards do not require dynamic rollover testing.

23.     There was no minimum Federal Standard that applied to the ROPS of the Sierra.

24.     GM knew that federally mandated testing has a limited relationship to vehicle performance in real world rollovers.

25.     In fact, GM conducted dynamic rollover testing on its vehicles many years before the Sierra was manufactured and it conducts dynamic rollover testing on its pickup trucks now.

26.     The Sierra is unreasonably dangerous and defective in rollover crashes, in part, because it does not have a strong roof that can support the weight of the vehicle as it rolls.

27.     The Sierra is unreasonably dangerous in rollover crashes, in part, because its seatbelt restraints allow excessive occupant excursion in rollovers.

28.     During its years of developing, designing, manufacturing, marketing, and selling vehicles, GM knew of the importance of a strong roof structure in its vehicles.

29.     GM knew that roof support structure compromise and deformation increases the likelihood of injury.

30.     GM knew that injuries in rollovers can be avoided if the roof structure maintains the integrity of the occupant survival space and the seatbelt restraints properly limit occupant excursion.

31.     GM failed to design and manufacture the ROPS of the Sierra so that it would be reasonably safe in a foreseeable rollover crash.

32.     GM knew about crashworthiness.

33.     Crashworthiness is the science of minimizing the risk of serious injury and fatality in

4

motor vehicle collisions through the use of safety systems.

34.     There are five basic crashworthiness principles: (1) maintain occupant survival space, (2) manage the collision energy, (3) restrain the occupant, (4) prevent ejection, (5) prevent fuel-fed fires.

35.     Crashworthiness requires that an auto manufacturer design its vehicles in such a way that when a crash occurs, injuries to the people inside the vehicle are minimized to the extent practical.

36.     Because the ROPS of the Sierra included a roof that was weak and dangerous, the ROPS of the Sierra was uncrashworthy.

37.     Because the ROPS of the Sierra included seatbelt restraints that did not properly limit occupant excursion in rollovers, the ROPS of the Sierra was uncrashworthy.

38.     When a vehicle's ROPS is not crashworthy, it means that occupants wearing their seatbelts suffer injuries in rollovers that could have been prevented by GM through design.

39.     Charmaine Smith was injured on August 31, 2021, when she was the right front passenger in a Sierra that rolled over on State Highway 351 near milepost 4 in Wyoming.

40.     Charmaine Smith was wearing her seatbelt.

41.     The rollover crash was of the type that is foreseeable to Defendant GM.

42.     During the rollover, the Sierra's roof structure above Charmaine Smith's head deformed downward and inward.

43.     The GM seatbelt that Charmaine Smith was using was ineffective in preventing excessive excursion and partial ejection.

44.     Charmaine Smith sustained serious injuries, including facial fractures, head impact and a near fatal traumatic brain injury in the rollover.

CAUSES OF ACTION

IV.
NEGLIGENCE

45.     Plaintiff realleges paragraphs 1 through 44.

46.     Defendant GM designed, manufactured, assembled, distributed and sold vehicles, including the Sierra with its defective ROPS.

47.     The injuries and damages suffered by Charmaine Smith were proximately caused by the negligence of Defendant GM and in designing, manufacturing, assembling, testing, marketing and selling a vehicle with a ROPS that does not provide adequate rollover occupant protection.

48.     Defendant GM knew, or in the exercise of due care should have known, that the unreasonably dangerous condition of the Sierra's ROPS would create a foreseeable and unreasonable risk of harm to users, including Plaintiff Charmaine Smith.

49.     GM was under a duty to properly and adequately design, manufacture, assemble, test, provide adequate warnings for, distribute and sell the Sierra with a reasonably safe ROPS so as not to present a danger to members of the general public who reasonably and expectedly under ordinary circumstances would use the vehicle.

50.     Defendant GM breached its duty of reasonable care owed to Plaintiff Charmaine Smith by being negligent in one or more of the ways described below.

51.     Defendant GM was negligent in designing the ROPS of the Sierra with inadequate roof strength.

52.     Defendant GM was negligent in designing the ROPS of the Sierra with seatbelt restraints that permit excessive occupant excursion in foreseeable rollover crashes.

53.     Defendant GM was negligent in selling the Sierra with a defective ROPS, and without proper warnings.

6

54.     Defendant GM was negligent in choosing to design the ROPS of the Sierra without a sufficiently strong roof even though it was aware of vehicle designs and testing which revealed the clear benefits of roofs with sufficient strength to prevent compromise of the "survival space" or "safety cage" around an occupant.

55.     Defendant GM was negligent in failing to adopt state-of-the-art technology to provide occupants and consumers with proper protection in rollover crashes.

56.     Defendant GM was negligent in choosing to disregard and ignore its obligation to hold the safety of the public paramount and failing to follow generally accepted principles of hazard control ("design, guard and warn").

57.      Defendant GM was negligent in designing, manufacturing, and marketing the Sierra with a ROPS that did not prevent partial ejection and contain restrained occupants in rollovers.

58.     Defendant GM had a duty to warn users about the potential for harm arising out of the use of the Sierra, and GM was negligent in failing to warn about the inherent dangers in the ROPS of the Sierra.

59.     Because of Defendant GM's negligence, consumers and users were denied important and material information that should have been fully disclosed.

V.
STRICT LIABILITY

60.     Plaintiff realleges paragraphs 1 through 59.

61.     Defendant GM was engaged in the business of designing, manufacturing, assembling, marketing and selling motor vehicles to the public, including the Sierra.

62.     Defendant GM placed the Sierra on the market with knowledge that it may be involved in expected and foreseeable crashes, including rollovers, in which it would prove not to be crashworthy.

7

63.     Defendant GM knew, or should have known, that ultimate users or consumers would not be able to detect the defects and dangerous conditions of the vehicle's ROPS.

64.     The Sierra with its ROPS was defective and unreasonably dangerous to ultimate users because of design and manufacturing defects that caused the vehicle and its ROPS to perform inadequately and in an uncrashworthy manner in the rollover event of August 31, 2021.

65.     GM is, therefore, strictly liable to Plaintiff under applicable products liability law without regard to or proof of negligence or gross negligence, although Plaintiff would also show that the Sierra was negligently designed, manufactured, assembled, marketed, and sold with a ROPS that was unreasonably dangerous and defective.

66.     The ROPS and the Sierra were improperly and inadequately tested by Defendant GM.

67.     The ROPS of the Sierra is defective in that the vehicle's roof structure was weak and did not maintain its integrity, preserve occupant survival space and provide containment in the event of a rollover crash.

68.     The ROPS of the Sierra is defective in that its seatbelt failed to prevent partial ejection and failed to provide appropriate occupant restraint and protection in the event of a rollover crash.

69.     The unreasonably dangerous nature of the defects in the ROPS of the Sierra as outlined above creates a high probability that when the Sierra is involved in rollover crashes, properly belted occupants will suffer severe and permanent personal injuries they otherwise would not have suffered if the Sierra had a safe ROPS.

70.     The Sierra's ROPS is defective in design because the foreseeable risks of harm could have been reduced or avoided by a reasonable alternate design and the Sierra is not reasonably safe by the omission of the alternate design.

8

71. Defendant GM knew of this probability prior to production and marketing of the vehicle, but Defendant willfully and wantonly manufactured and/or marketed and sold the vehicle with the defects.

72. For the reasons set forth above, GM is strictly liable to the Plaintiff for all physical harm to Plaintiff and damages flowing therefrom pursuant to the standard set forth in Restatement (Second) of Torts §402A (1965).

VI.
BREACH OF WARRANTY

73. Plaintiff realleges paragraphs 1 through 72 above.

74. Plaintiff further alleges that the ROPS of the Sierra was expressly and impliedly warranted by GM to be safe for the use for which it was purchased. In particular, GM expressly and impliedly warranted that the ROPS of the Sierra was crashworthy and would protect occupants of the Sierra from injury, or at least not contribute to the injuries suffered, in the event of a foreseeable rollover crash.

75. The ROPS of the Sierra was neither safe nor fit for the purpose for which it was purchased, nor was it of merchantable quality. As a result, the express and implied warranties mentioned above were breached.

76. As a direct and proximate result of the breach of warranties, the ROPS of the Sierra roof structure crushed and the seatbelt restraints failed to couple Charmaine Smith to her seat, and such failures caused injury and damages to Plaintiff.

VII.
DAMAGES

77. Plaintiff realleges paragraphs 1 through 76 above.

78. As a direct and proximate result of the foregoing negligence and defects, Plaintiff

Charmaine Smith sustained bodily injury and resulting pain and suffering, impairment, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care, treatment, rehabilitation and loss of ability to earn money. The injuries to Charmaine Smith are permanent within a reasonable degree of medical probability, and Charmaine Smith has suffered these injuries in the past, from the date of the accident, and will continue to sustain such injuries in the future.

## VIII.
## JURY DEMAND

79. Plaintiff respectfully requests a jury trial.

## IX.
## PRAYER

WHEREFORE, Plaintiff prays that Defendant General Motors LLC be cited to appear and answer herein, and that upon final trial, Plaintiff recover actual and compensatory damages as specified above, including medical expenses (past and future), an award for pain and suffering (past and future), an award for loss of enjoyment of life (past and future), an award for disfigurement and disability (past and future), an award for lost income and earning capacity (past and future), an award for such additional costs and damages as permitted by Wyoming law and are deemed just and equitable, and for such other and further relief, both general and special, legal and equitable, to which she may be justly entitled.

DATED this _____ day of October 2022.


JACK D. EDWARDS, 6-3877
EDWARDS LAW OFFICE, P.C.
PO Box 5345
Etna, WY  83118-5345
Telephone:    307.883.2222
Facsimile:      307.883.0555
Email:   jack@edwardslawofficepc.com


KADEN B. CANFIELD, 7-6238
EDWARDS LAW OFFICE, P.C.
PO Box 5345
Etna, WY  83118-5345
Telephone:    307.883.2222
Facsimile:      307.883.0555
Email:    kaden@edwardslawofficepc.com


and


ROBERT E. AMMONS
(*pro hac vice* application to be submitted)
THE AMMONS LAW FIRM, L.L.P.
3700 Montrose Boulevard
Houston, TX  77006
Telephone:    713.523.1606
Facsimile:      713.523.4159
Email:          rob@ammonslaw.com
Email:          terri@ammonslaw.com


ATTORNEYS FOR PLAINTIFF